**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | |
| | : | CHAPTER 11 |
| CLIFFORD L. HILL | : | |
| SAUNDRA K. HILL, | : | |
| | : | Case No. 2:13-bk-57577 |
| Debtors. | : | |
| | : | Judge CALDWELL |

# AMENDED
# CHAPTER 11 PLAN
# <u>OF REORGANIZATION</u>

James E. Nobile            (0059705)
**NOBILE & THOMPSON CO., L.P.A.**
4876 Cemetery Road
Hilliard, OH 43026
(614) 529-8600
Email: jenobile@ntlegal.com

Counsel for:   Clifford and Saundra Hill, Individuals

CLIFFORD and SAUNDRA HILL ("Debtors") hereby propose the following Amended Chapter 11 Plan of Reorganization ("Plan") pursuant to 11 U.S.C. §1101, <u>et seq</u>.

## ARTICLE I

## DEFINITIONS

1. "Allowed Claim" shall mean a claim against Debtors determined as of the Effective Date, (a) in respect of which a proof of claim has been filed with the Court within the applicable period of limitations fixed by the Court's Order; or (b) scheduled in the schedule of liabilities filed with the Court by Debtors, pursuant to § 521(1) of the Code and Bankruptcy Rules 1007(b) and 1009 and not listed as disputed, contingent or unliquidated as to amount; or (c) of a kind specified in § 507(a)(1) of the Code, and in any case, as to which no objection to the allowance thereof has been interposed within any permissible or extended period of time, or as to which any such objection has been determined by a Final Order.

2. "Allowed Secured Claim" shall mean an Allowed Claim secured by a lien on property in which Debtors have an interest, or which is subject to setoff under §553 of the Code, to the extent of the value (determined in accordance with §506(a) of the Code) of such creditor's interest in Debtors' interest in such property, or to the extent of the amount subject to such setoff, as the case may be.

3. "Ballot" shall mean the form, as approved by the Court, distributed with the Disclosure Statement to each holder of an impaired Claim entitled to vote to accept or reject the Plan, on which acceptance or rejection of the Plan and such other elections as may be made thereon are to be indicated.

4. "Case" shall mean Debtors' Bankruptcy Case, case number 13-57577, which is pending before the Court.

5. "Chapter 11" shall mean chapter 11 of the Code.

6. "Claim Determination Date" shall mean the date on which a particular claim has been allowed, disallowed, or otherwise determined by a Final Order.

7. "Code" shall mean the Bankruptcy Reform Act of 1978, effective October 1, 1979, as set forth in Title 11 of the United States Code, and as amended thereafter from time to time.

8. "Confirmation" shall mean the entry by the Court of the Confirmation Order.

9. "Confirmation Order" shall mean the Final Order confirming this Plan.

10. "Court" shall mean the United States Bankruptcy Court for the Southern District of Ohio, Eastern Division, including the Honorable Judge CALDWELL or any other United States Bankruptcy Judge presiding in the Chapter 11 case of Debtor.

11. "Debtors" shall mean Clifford and Saundra Hill.

12. "Disclosure Statement" shall mean the Disclosure Statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Court.

13. "Effective Date" shall mean the date of entry of the Confirmation Order.

14. "Final Order" shall mean the entry of an appealable order, judgment or decree by the Court, as to which no appeal is pending and for which the time during which an appeal or leave therefore may be taken has expired.

15. "Governmental Units" shall have the meaning ascribed to it in §101(27) of the Code.

19. "Internal Revenue Service" shall mean the United States of America, by and through its agency, the Department of the Treasury, Internal Revenue Service.

20. "Petition Date" shall mean <u>September 24, 2013</u>.

21. "Plan" or "Plan of Reorganization" shall mean this Amended Chapter 11 Plan of Reorganization in its present form or as it may be amended or modified in accordance with the Code.

22. "Reorganized Debtors" shall mean the Debtors on and after the Effective Date.

23. "Tax Code" shall mean the Internal Revenue Code found at Title 26 of the United States Code.

In addition to the foregoing specific definitions, any terms found herein, whether capitalized or not, which are not specifically defined herein shall be defined in accordance with the definitions set forth in §101 of the Code.

## **ARTICLE II**

## **CLASSIFICATION OF CLAIMS AND INTERESTS**

Claims and interests are classified with respect to Debtor and this Plan as follows:

<u>CLASS A</u>:                    The Allowed Secured Claim of KEY BANK, N.A.

<u>CLASS B</u>:                    The Allowed Secured Claim of WELLS FARGO BANK, N.A. c/o OCWEN LOAN SERVICING, LLC

<u>CLASS C</u>:                    The Allowed Secured Claim of DELAWARE COUNTY OHIO TREASURER

<u>CLASS D</u>:                    The Allowed Claim of JP MORGAN CHASE BANK, N.A.

<u>CLASS E</u>:                    The Allowed Claims of PRIORITY UNSECURED CREDITORS

<u>CLASS E1</u>:                  The Allowed Claim of the INTERNAL REVENUE SERVICE

<u>CLASS E2</u>:                  The Allowed Claim of the OHIO DEPARTMENT OF TAXATION

<u>CLASS E3</u>:                  The Allowed Claim(s) of ADMINISTRATIVE EXPENSE CLAIM HOLDERS

<u>CLASS F</u>:                    The Allowed Claims of GENERAL NON-PRIORITY UNSECURED CREDITORS

CLASS G:                    The Treatment Provided To ALLOWED INTEREST CLAIMS

## **ARTICLE III**

## **TREATMENT OF CLASSES**

### CLASS A – KEY BANK, N.A.

Key Bank, N.A. ("KEY") purports to be the grantee of a consensual mortgage secured by  real estate located in Delaware County, Ohio and which is more commonly identified as:

245 Green Cook Road, Sunbury, Ohio 43074 ("Green Cook")

Permanent Parcel Numbers:

316-110-02-042-000
316-110-02-041-000

Green Cook consists of 6 total acres upon which the Debtors maintain a residence, a barn, and a dog kennel, business operation.

KEY has not yet filed a proof of claim, but KEY did file a Motion For Relief From Stay [ECF Doc. 41] in which KEY stated that it was owed $238,882.34 as of March 27, 2014.  Green Cook was appraised at $134,000.00 by the Debtors and at $155,000.00 by KEY.

The Debtors propose the following treatment for KEY's Allowed Claim(s):

KEY's Allowed Claim is IMPAIRED under the Plan.  KEY shall retain its lien(s) of record on Green Cook.  KEY shall be paid an Allowed Secured Claim in the total amount of $144,500.00.

KEY's Allowed Secured Claim shall be repaid over 300 months at 4.2% interest per annum with payments of $778.77 per month.  KEY's payments shall begin with the first month following the month of the Effective Date of the Plan. In the event the Debtors default on payments, KEY shall send the Debtors a written notice by regular

U.S. mail detailing the default.  If the Debtors fail to fully cure the default stated in the notice within thirty-three (33) days after the mailing date of the notice, KEY may take all appropriate legal action to enforce its mortgage and the terms of this Plan .

The Debtors received a lawful Chapter 7 bankruptcy discharge on June 23, 2009 in the case of *In re Clifford and Saundra Hill, Case No. 2:09-bk-51674 (Bankr. S.D. Ohio 2009).*  However, KEY and the Debtors entered into and filed a Reaffirmation Agreement on April 29, 2009.  Thus, the deficiency portion of KEY's debt shall be treated and paid as a general, non-priority, unsecured claim in CLASS F claim.

<u>CLASS B –WELLS FARGO BANK, N.A. c/o OCWEN LOAN SERVICING, LLC</u>

Wells Fargo Bank, N.A. c/o Ocwen Loan Servicing, LLC ("OCWEN") purports to be the grantee of a consensual mortgage secured by real estate located in Delaware County, Ohio and which is more commonly identified as:

320 S. Three Bs & K Road, Galena, Ohio 43021 ("Three Bs & K")

Permanent Parcel Numbers:

418-140-01-063-000
418-140-01-064-000

Three Bs & K consists of 3 total acres upon which the Debtors maintain several structures and a storage yard used primarily to operate of a wholesale stone/landscape material company known as *Hill Stone Scapes, LLC* (100% owned by Debtor, Saundra K. Hill).

OCWEN has not yet filed a proof of claim.  The Debtors stated in Schedule D of their bankruptcy schedules that OCWEN was owed $240,000.00 as of September 24, 2013.  Three Bs & K was appraised at $83,000.00.

The Debtors propose the following treatment for OCWEN's Allowed Claim(s):

OCWEN's Allowed Claim is IMPAIRED under the Plan.  OCWEN shall retain its lien(s) of record on Three Bs & K.  OCWEN shall be paid an Allowed Secured Claim in the total amount of $83,000.00.

OCWEN's Allowed Secured Claim shall be repaid over 300 months at 4.2% interest per annum with payments of $447.32 per month.  OCWEN's payments shall begin with the first month following the month of the Effective Date of the Plan. In the event the Debtors default on payments, OCWEN shall send the Debtors a written notice by regular U.S. mail detailing the default.  If the Debtors fail to fully cure the default stated in the notice within thirty-three (33) days after the mailing date of the notice, OCWEN may take all appropriate legal action to enforce its mortgage and the terms of this Plan.

The Debtors received a lawful Chapter 7 bankruptcy discharge on February 23, 2009 of their personal obligations on OCWEN's debt in the case of *In re Clifford and Saundra Hill, Case No. 2:09-bk-51674 (Bankr. S.D. Ohio 2009).*  No enforceable reaffirmation agreement exists as to this obligation. Thus, OCWEN has no Allowed Claim for any other amounts not otherwise provided for pursuant to this Plan.

## CLASS C – DELAWARE COUNTY OHIO TREASURER

The Delaware County Ohio Treasurer ("DCOT") holds a statutory lien for real estate taxes imposed against Green Cook and Three Bs &K.  DCOT has not filed a proof of claim as of the date of filing of this Plan.

A review of DCOT's publicly available records shows that through July 2014 the following real estate taxes are owed:

<u>Green Cook</u>:

| | |
|---|---|
| 316-110-02-042-000 | $18,168.84 |
| 316-110-02-041-000 | $ 3,167.50 |

<u>Three Bs & K</u>

| | |
|---|---|
| 418-140-01-063-000 | $ 1,521.33 |
| 418-140-01-064-000 | $ 3,039.70 |

| | |
|---|---|
| TOTAL: | $25,897.37 |

The Debtors propose the following treatment for DCOT's Allowed Claim(s):

DCOT's Allowed Claim is IMPAIRED under the Plan.  DCOT shall retain its lien(s) of record on Green Cook and Three Bs & K.  DCOT shall be paid an Allowed Secured Claim in the total amount of $25,897.37.

DCOT's Allowed Secured Claim shall be repaid over <u>72 months</u> at 4.2% interest per annum with payments of <u>$407.63 per month</u>.  DCOT's payments shall begin with the first month following the month of the Effective Date of the Plan. In the event the Debtors default on payments, DCOT shall send the Debtors a written notice by regular U.S. mail detailing the default.  If the Debtors fail to fully cure the default stated in the notice within thirty-three (33) days after the mailing date of the notice, DCOT may take all appropriate legal action to enforce its lien rights and the terms of this Plan.

<u>CLASS D – JP MORGAN CHASE BANK, N.A.</u>

JP Morgan Chase Bank, N.A. ("CHASE") purports to be the grantee of a consensual mortgage secured by real estate located in Delaware County, Ohio and which is more commonly identified as:

245 Green Cook Road, Sunbury, Ohio 43074 ("Green Cook")

Permanent Parcel Numbers:

316-110-02-042-000
316-110-02-041-000

Green Cook consists of 6 total acres upon which the Debtors maintain a residence, a barn, and a dog kennel operation.

CHASE filed a proof of claim in the total amount of $79,597.31 [Claim #2]. Green Cook was appraised at $134,000.00 by the Debtors and $155,000.00 by KEY. The mortgage held by CHASE is junior to the mortgage held by KEY. There is no equity in the property to secure any portion of the claim of CHASE.

The Debtors propose the following treatment for CHASE's Allowed Claim(s):

CHASE's Allowed Claim is IMPAIRED under the Plan. CHASE shall **not** retain its lien(s) of record on Green Cook since it is wholly unsecured. Upon receipt of payment of $500.00 however, CHASE shall record a satisfaction of such mortgage with the Delaware County, Ohio Recorder within sixty (60) days.

The Debtors received a lawful Chapter 7 bankruptcy discharge on February 23, 2009 of their personal obligations on CHASE's debt in the case of *In re Clifford and Saundra Hill, Case No. 2:09-bk-51674 (Bankr. S.D. Ohio 2009).* No enforceable reaffirmation agreement exists as to this obligation. Thus, CHASE has no Allowed Claim for any other amounts not paid pursuant to this Plan.

<u>CLASS E – PRIORITY UNSECURED CREDITORS</u>

As of the Petition Date the Debtors <u>do</u> <u>not</u> owe creditors with claims that would be defined under 11 U.S.C. §507(a)(1) [domestic support obligations]; §507(a)(9) [FDIC subrogation claims]; §507(a)(10) [intoxicated operation of motor vehicle or vessel

_____]; §507(a)(3)[involuntary case operating expenses]; §507(a)(4) [employee wages or commissions]; §507(a)(5) [employee benefit plan claims]; §507(a)(6) [allowed unsecured claims involving production of or raising of grain, or claims of a U.S. fisherman]; or §507(a)(7) [consumer rental/lease deposit claims].

As of the Effective Date of this Plan, the Debtors will owe the following allowed Priority Unsecured Creditors:

1.) **11 U.S.C. §507(a)(8)** (Claims of Governmental Units):

CLASS E1 -   The INTERNAL REVENUE SERVICE ("IRS").   The IRS filed an amended proof of claim on December 5, 2013 [Claim #1a] in the amount of $3,211.78.  The IRS' claim contained estimated amounts for certain tax years for which returns appear not to have been filed.  The Debtors are in the process of completing and filing any missing Federal, State and Local tax returns.  Such returns will be completed and filed before the Effective Date of this Plan. The claim in CLASS E1 is UNIMPAIRED under this PLAN.  Unless the IRS and the Debtors separately agree by stipulation to a different treatment, the Debtors will pay IRS' Allowed Claim in CLASS E1 in full on or within thirty (30) days after the Effective Date.

CLASS E2 -   The OHIO DEPARTMENT OF TAXATION ("OTAX").  OTAX filed a proof of claim on December 10, 2013 [Claim #3] in the total amount of $2,526.74, of which $1,098.55 is entitled to priority treatment. The claim in CLASS E2 is UNIMPAIRED under this PLAN.  Unless OTAX and the Debtors separately agree by stipulation to a different treatment, the Debtors will pay OTAX's Allowed Claim in CLASS E2 in full on or within thirty (30) days after the Effective Date.  The remaining

portion of OTAX's Allowed Claim shall be treated and paid as a claim in CLASS F - ALLOWED CLAIMS OF GENERAL NONPRIORITY UNSECURED CLAIMS.

    2.) **11 U.S.C. §507(a)(2)** [administrative expenses].

    CLASS E3:   As of the filing date of this Plan, the only known, unpaid claim entitled to administrative expense priority are the Debtor's attorney fees and expenses owed to Nobile & Thompson Co., L.P.A ("Counsel").  The allowance of such fees and expenses is subject to further Court approval.  Counsel will file a fee and expense application to liquidate/finalize the amount due.  The estimated amount due in this CLASS is $8,500.00.  The claim(s) in this CLASS are UNIMPAIRED under this PLAN. Unless, the Debtors and each claimant in this CLASS agree by separate, filed stipulation to a different treatment, the Debtors will pay each Allowed Claim in CLASS E3 as more fully described in Article IV below.

CLASS F – ALLOWED CLAIMS OF GENERAL
NONPRIORITY UNSECURED CLAIMS

    The number of creditors making up CLASS F is small.  Some claimants have filed proofs of claim while others have not.  However, irrespective of whether a claimant actually filed a proof of claim with the Court, all such claims that are not contingent, unliquidated or disputed shall be paid as provided below.

    The anticipated Allowed Claims in CLASS F are as follows:

| | |
|---|---|
| OTAX | $1,428.19 |
| Sage Chiropractic | $1,790.00 |
| Key Bank | $104,882.34 |
| Brian Barkley | $0.00 |

    The Debtors anticipates objecting to the allowance of any claim owed to Brian Barkley.  The Debtors scheduled Mr. Barkley's claim as disputed in Schedule F.  Mr.

Barkley's claim was lawfully discharged as part of the Debtors' Chapter 7 bankruptcy discharge on February 23, 2009 in the case of *In re Clifford and Saundra Hill, Case No. 2:09-bk-51674 (Bankr. S.D. Ohio 2009)*.  Thus, Mr. Barkley has no Allowed Claim for any amounts pursuant to this Plan.

The claims in CLASS F are IMPAIRED under this Plan. The Debtors propose to pay the Allowed Claims in CLASS F a total of $5,000.00.  Disbursement of such funds to the claimants in CLASS F shall be made on a pro rata basis.  Beginning with the year following the year in which the Plan is confirmed, the Debtors will disburse at least $1,667.00 per year for three (3) consecutive years.  Such disbursements will occur on or before the 30th day of April of each consecutive year.

## CLASS G – TREATMENT OF INTEREST HOLDERS

The Debtors are "individuals".  For the purposes of the Plan, all of the real and personal property is owned personally by the Debtors.  The Debtors do not have an "interest" or "claim" subject to specific treatment under this Plan.  The Debtors intend to confirm this Plan pursuant to 11 U.S.C. §1129(a) or (b).  In the event the Debtors are compelled to seek confirmation under 11 U.S.C. §1129(b), they intend, notwithstanding the treatment of all claims that are impaired, to retain all rights in property of the estate defined under 11 U.S.C. §1115 as permitted by 11 U.S.C. §1129(b)(2)(B)(ii).

## **ARTICLE IV**

## **TREATMENT OF CLAIMS UNDER 11 U.S.C. § 507(a)(2)**

All Allowed Claims of a kind specified in §507(a)(2) of the Code incurred in the Case, including fees payable under 28 U.S.C. §1930(a) and §1129(a)(12) of the Code, shall be paid by the Debtors in full upon the later of, allowance by the Court, the

Effective Date, or such later date and on such terms as may be agreed upon by the Debtors and the claimant.

The only known administrative claims at issue will be the administrative claims of the Debtors' counsel, James E. Nobile/Nobile & Thompson Co., L.P.A. ("Counsel") and certain statutorily required fees associated with the U.S. Trustee.

As of the filing date of the Petition, the Debtors paid Counsel $4,250.00 to cover their filing fees ($1,213.00) and their pre-petition attorney fees in the amount of ($3,037.00).  Counsel holds $0.00 in trust as security for post-petition fees and expenses. The Debtors understand that Counsel will keep time and expense records for work performed after the Petition Date, and will submit formal fee and expense applications for Court approval.  The Debtors will generally pay these amounts in accordance with ARTICLE III – CLASS E3.

As of the filing of this Plan, the Debtors estimate that their Counsel's unpaid, post-petition fees and expenses total $8,500.00.  After review and approval by the Court of their Counsel's application, the Debtors will pay and allowed fees and expenses within thirty (30) days after confirmation of the Plan or at any other time the Debtors and their Counsel may agree.

As for the additional administrative expense claims, the Debtors propose to pay their quarterly U.S. Trustee fees and costs as they become due in the ordinary course of the U.S. Trustee's administration of this Case.

## ARTICLE V

## TREATEMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS

### UNEXPIRED LEASES AND EXECUTORY CONTRACTS

The Debtors are not parties to any unexpired leases or executory contracts within the meaning of the Code.

## ARTICLE VI

## RETENTION OF RETAINED ACTIONS

Typically, Chapter 11 debtors may seek to retain certain property-recovery causes action to provide a greater monetary return to unsecured creditors.  Such causes of action can include lien avoidance measures [11 U.S.C. §544]; preferential payment recoveries [11 U.S.C. §547]; pre and post petition fraudulent and property transfer avoidances [11 U.S.C. §§548 and 549]; and recovery of certain offsets [11 U.S.C. §553(b)].

As of the Petition Date, the Debtors does not anticipate preferential transfer/lien avoidance actions pursuant to 11 U.S.C. §547.  Likewise, the Debtors are not aware of any other unresolved causes of action under 11 U.S.C. §§544, 547, 548, 549, 550, 551, and 553(b) of the Code that could be prosecuted to benefit the creditors of this Case.

## ARTICLE VII

## MEANS OF EXECUTION OF THE PLAN

1. General Provisions.  Pursuant to 11 U.S.C. §1123(a)(5) and (a)(8), the Debtors will be providing payment to their creditors under the Plan from net monthly revenues generated from the operation and management of two businesses run by Saundra K. Hill: (i) Hill Stone Scapes, LLC and (ii) "Saundra's Shepherds".

2.  The Plan's implementation assumes the additional following information:

14

- The Debtors [Saundra K. Hill] will draw at least $2,500.00 per month from Hill Stone Scapes, LLC to contribute to their monthly disposable income;

- The Debtors [Saundra K. Hill] will draw at least $1,800.00 per months from "Saundra's Shepherds" to contribute to their monthly disposable income;

- The Debtors [Clifford L. Hill] will receive at least $467.00 per month from the Social Security Administration to contribute their monthly disposable income;

- The Debtors' anticipated monthly residential budget will be $2,722.00 per month:

- The Debtors' anticipated additional monthly reserve budgetary items for residential real estate taxes are in the amount of $275.00 per month.

- The Debtor's anticipated debt monthly debt service after the Effective Date will be $1,633.72 per month.

- The Debtors will be contributing sufficient money and/or property which will be distributed under the Plan to pay all Allowed Claims in an amount not less than the allowed amount of such claims.  Thus, the Debtors' Plan will comply with the provisions of 11 U.S.C. §1129(a)(15)(A).

- The Debtors will retain all property of the estate.

- The Debtors' Plan depends upon the permanent modification of the rights of all lien holders and claimants as expressly provided herein.

3. <u>Distribution</u>:  Monthly distributions after the Effective Date shall be made by the Debtors, on or before the times set out for each respective Class.  On or before the Effective Date, the Debtors will open a separate bank DIP disbursement checking

15

account from which to disburse Plan payments. The Debtors will maintain bank records to account for all distributions under the Plan.

4. <u>Property of the estate:</u> Upon the Effective Date, all right, title and interest in and to the assets which constitute property of the estate will permanently vest in the Debtors.

5. <u>Objections to Claims</u>. The Debtors shall have the exclusive right to review and, if appropriate, pursue all objections to claims asserted against Debtors' estate in accordance with the Code.  The Debtors, should they choose to file such objections, shall diligently prosecute such objections.  The Debtors will commit to filing any and all objections to such claims prior to or within sixty (60) days after the Effective Date of the Plan .

6. <u>Post Confirmation Fees and Reports</u>.  Subsequent to Confirmation, through the closing the Bankruptcy Case under §350 of the Code and entry of a final decree pursuant to Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtors will pay all fees payable under 28 U.S.C. §1930(a)(6), and will timely file with the Court and serve, as required by Rule 3020-2 of the Local Bankruptcy Rules of the Court, a report, or reports, of the actions taken, the progress made toward the consummation of the Plan, and the time frame anticipated until a final report and motion for the entry of a final decree can be filed with the Court.

## **ARTICLEVIII**

## **GENERAL PROVISIONS**

Confirmation shall constitute authorization by the Court for the Debtors' use of funds of the Debtors or of the estate(s) to meet any cash requirements in the Case(s), and if applicable, shall terminate the prospective operation of any then-existing order or

stipulated order entered in the Case(s) granting Debtor's(s) authority to use cash collateral and providing adequate protection.

Notwithstanding any other provision of the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions with respect to any claim which at such date is disputed, unliquidated or contingent, shall not be made until such claim becomes an Allowed Claim, whereupon such payments and distributions shall be made promptly, or as otherwise provided for in the Plan.

All obligations of the Debtors under the Plan are expressly contingent upon Confirmation.  Consequently, the Debtors may, for any reason, at any time prior to Confirmation withdraw as a proponent of this Plan by filing a notice of such withdrawal with the Court.  In such event, this Plan shall immediately be withdrawn from consideration for Confirmation and the Debtors shall not have any further obligations under the Plan.

Neither the filing of this Plan, nor any statement or provision contained herein, nor the taking by Debtors or any other party of any action with respect to this Plan shall (a) be deemed to be an admission against interest; (b) until the Effective Date, be or be deemed a waiver of any rights which any party might have against Debtors or any of their property or against any other party; and (c) until the Effective Date, be or be deemed to be a waiver of any rights which Debtors, as debtor or as a debtor in possession under the Code, might have against any holder of an Allowed Claim or Allowed Interest, against any other party, or against the property thereof.  Until the Effective Date, all such rights are specifically reserved.  In the event that the Effective Date does not occur, neither this

Plan nor any statement contained herein, may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this case.

Notwithstanding anything contained herein and above, the Debtors may prepay any payment or installment due under this Plan without any penalty and may negotiate any compromise or settlement with a party to whom, or to the extent for whom, any such payment or installment is due on such terms and conditions as may be mutually acceptable.

## ARTICLE IX

## CONFIRMABILITY AND SEVERABILITY OF THE PLAN AND CONFIRMATION

The Debtors reserve the right to amend, modify, revoke or withdraw the Plan.  A determination by the Court that the Plan is not confirmable pursuant to section 1129 of the Code shall not limit or affect the Debtors' ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Code.

The Debtors requests Confirmation under section 1129(b) of the Code if any impaired class does not accept the Plan pursuant to section 1126 of the Code.  In that event, the Debtors reserve the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Code requires modification.

## ARTICLE X

## DISCHARGE AND RELEASE; INJUNCTION

The Debtors are "individuals" within the meaning of 11 U.S.C. §1141(d)(5).

Thus, the Debtors will not receive a discharge until they either complete their payments as required by the Plan, or the Court, by separate motion, orders otherwise. However, the Debtors reserve the right under §1141(d)(5)(B) to seek discharges prior to

the completion of their payments.  If the Debtors elect to seek a pre-payment completion discharge, they will file a motion requesting a hearing with the Court and give notice to all affected creditors, parties in interest and the U.S. Trustee.  If the Court finds sufficient "cause" within the meaning of §1141(d)(5), the Court may grant the Debtors their discharges before completion of their plan payments.

Once a discharge is ultimately issued by the Court, it shall be effective as to all debts except those that are nondischargeable under 11 U.S.C. §523, or otherwise not subject to discharge under the Plan.

Except as to debts that are deemed nondischargeable under 11 U.S.C. §523, or otherwise subject to discharge under the Plan, all creditors that have held, currently hold or may hold a Claim or other debt or liability against the Debtors shall be permanently enjoined from taking any of the following actions against (i) the Debtors; or (ii) against any of their property, on account of, or in any way relating to, any such Claim, debts or liabilities: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff or right of subrogation of any kind against any debt, liability or obligation due to the Debtors; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

## ARTICLE XI

## MODIFICATION OF THE PLAN

The Debtors may propose amendments or modifications to the Plan at any time prior to Confirmation.  After Confirmation, the Debtors may, with approval of the Court, and so long as it does not materially or adversely affect the interests of parties in interest, remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order in such a manner as may be necessary to carry out the purposes and effect of the Plan.

## ARTICLE XII

## RETENTION OF JURISDICTION

The Court shall retain jurisdiction subsequent to Confirmation of the Plan for the following purposes:

(a)     Determining the allowance of any claim, including requests for allowance of administrative expenses under §503 of the Code incurred prior to or subsequent to Confirmation;

(b)     Determining the classification, validity, and amount of claims, including re-examining any claim that has been allowed as of the date of the Confirmation;

(c)     Hearing and determining the extent, priority and validity of any lien or interest asserted by any party against the property of the estate;

(d)     Determining all questions and disputes regarding title to property of the estate;

(e)     Determining all questions and disputes regarding any assumption of an executory contract or unexpired lease proposed hereunder, and determining any damages suffered by any party to an executory contract or unexpired lease rejection;

(f)     Hearing and determining questions of valuation, as necessary;

(g)     Hearing and determining all claims by Debtors against any party to an executory contract or unexpired lease, or any other claims which Debtors may have against any party which would lead to recovery of property or monies for Debtors;

(h)     Hearing and determining any and all motions, applications, adversary proceedings, and contested or litigated matters arising out of or in any way related to the claims, demands, assets, and causes of action retained by Debtors;

(i)     Confirming a Plan pursuant to § 1127(b) of the Code;

(j)     Hearing and determining any dispute relating to the terms or implementation of this Plan or any modified plan, Confirmation Order, or any other matters arising out of or in way related to this Case;

(k)     Issuing any order necessary to aid in the implementation of the Plan or Confirmation Order, including without limitation such declaratory or injunctive orders as are appropriate to protect any party in interest;

(l)     Hearing and determining any matters arising in connection with the Final Report and Account of Debtor; or

(m)     Entering any order concluding and terminating the Case.


BY AND ON BEHALF OF

**/s/      Clifford L. Hill**

**/s/      Saundra K. Hill**